IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VICTOR HEMPHILL | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 07-1223 |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security | : | |

**MEMORANDUM**

LOWELL A. REED, Jr., Sr. J                                                                November 21, 2007

      Upon consideration of the brief in support of request for review filed by plaintiff, defendant's response and plaintiff's reply thereto (Doc. Nos. 7, 8, & 9), the court makes the following findings and conclusions:

      1.    On June 12, 2001, Victor Hemphill ("Hemphill") filed for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f, alleging an onset date of June 12, 2001. (Tr. 55). On October 9, 2003, after an August 21, 2002 hearing before an ALJ, an October 22, 2002 decision denying benefits, and an appeal to the district court, the court remanded Hemphill's case for further development of the record regarding the nature and severity of Hemphill's mental impairments. (Tr. 4-5; 9-19; 31-34; 526-71; 620-22; 623). A different ALJ held a second hearing on May 3, 2005 and filed a partially favorable decision on January 27, 2006. (Tr. 591-616; 760-814). After the Appeals Council denied review of the new decision, pursuant to 42 U.S.C. § 405(g), Hemphill filed his complaint in this court on March 29, 2007. (Tr. 572-74).

      2.    In her decision, the ALJ fully adopted the prior ALJ's decision to the extent that it was compatible with her own and concluded that Hemphill had physical and mental impairments which were severe. (601 ¶ 3; 615 Finding 2).[1] The ALJ further found that Hemphill's impairments did not meet or equal a listing, and that, prior to turning age 50, he had the residual functional capacity ("RFC") to perform unskilled sedentary work with occasional postural changes and simple work tasks, and was able to perform a significant number of jobs in the national economy. (Tr. 613 ¶ 3 - 614 ¶ 4; 615 Findings 3, 6, 11). As a result, the ALJ concluded that Hemphill was not disabled prior to age 50 but was disabled after he turned 50 on August 8, 2004. (Tr. 599 ¶ 2; 614 ¶ 6; 615 Finding 13; 616 ¶ 1). Thus, the relevant period in dispute is from June 12, 2001 to August 8, 2004.

      3.    The Court has plenary review of legal issues, but reviews the ALJ's factual findings to determine whether they are supported by substantial evidence. <u>Schaudeck v. Comm'r of</u>

---

[1] All numbered paragraph references to the ALJ's decision begin with the first full paragraph on each page.

Soc. Sec., 181 F.3d 429, 431 (3d. Cir. 1999) (citing 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). It is more than a mere scintilla but may be less than a preponderance. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). If the conclusion of the ALJ is supported by substantial evidence, this court may not set aside the Commissioner's decision even if it would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999); see 42 U.S.C. § 405(g).

    4. Hemphill raises six arguments in which he alleges that the determinations by the ALJ were legally insufficient or not supported by substantial evidence. These arguments are addressed below. However, upon due consideration of all of the arguments and evidence, I find that the ALJ's decision is legally sufficient and supported by substantial evidence.

    A. Hemphill first alleges that the ALJ failed to properly assess the medical evidence regarding the nature and severity of his physical impairments and only dealt with his mental impairments. I disagree. The ALJ adopted the findings regarding Hemphill's physical impairments found in the first ALJ's decision, which were not affected by the remand. (Tr. 12-19; 601 ¶ 3). Then, in her own decision, the ALJ re-summarized the first ALJ's analysis and the evidence regarding physical impairments. (Tr. 601 ¶ 4 - 603 ¶ 2). Finally, contrary to Hemphill's suggestion, the ALJ then discussed much of the newer medical evidence of physical impairments which is not in the record but appended to Hemphill's instant request for review. (Tr. 607 ¶ 5; 611 ¶ 2 - 613 ¶ 2; Doc. No. 7, Exhs. C-F).[2] Therefore, the ALJ did not merely rest on the first ALJ's conclusions, as contended by Hemphill, but did consider the changes in his condition occurring between the first and second decisions. As a result, this argument must fail.

    B. Second, Hemphill contends that the ALJ erred by discounting the weight given to his treating doctors Kenneth Kron, M.D. and Ted Wolf, M.D. and therapist Jim Moore, M.S. and by giving too much weight to the non-examining ME, Richard B. Saul, M.D. I have reviewed the evidence and the ALJ's reasons for the weight given to the various reports and I find that the ALJ's decision was supported by substantial evidence. Although the ALJ's conclusion was not the only one that a reasonable person could reach, it was reasonable and was supported by sufficient evidence. Brown, 845 F.2d at 1213.

    The ALJ first considered Dr. Kron's July 2, 2002 psychological evaluation (Tr. 659-62) and an undated, unsigned and obsolete psychiatric review technique form apparently completed by Dr. Kron. (Tr. 286-93). While it is evident that the ALJ gave Dr. Kron's July 2, 2002 evaluation some weight (but less than that given to Dr. Saul), he gave no significant weight to the undated form because its extreme findings bore little to no resemblance to the more mild findings in his July 2, 2002 evaluation. (Tr. 604 ¶ 1 - 605 ¶ 1); see 20 C.F.R. § 416.927(d)(3)-(4) (providing that medical opinions that are unsupported by medical signs and laboratory findings or

---

[2] It is unclear why over 100 pages of records which were submitted to the ALJ, including the written interrogatory responses of the medical expert ("ME"), were not placed in the record. However, it is evident that these records were utilized by the ALJ and neither party has objected to their use. As a result, I will consider the documents as if they were part of the official record.

are inconsistent with the record, receive less weight). The ALJ also noted that Hemphill did not describe any serious mental illness symptoms until after his first hearing. (Id.).

Next, the ALJ compared Mr. Moore's June 6, 2002 psychosocial evaluation (Tr. 655-58) with Dr. Kron's July 2, 2002 evaluation and noted that Hemphill demonstrated much less objectively observed pathology to Dr. Kron and that Dr. Kron had assigned Hemphill a higher GAF score than had Mr. Moore. (Tr. 605 ¶ 3). The ALJ further noted that Mr. Moore's notes from WES Health Centers ("WES") detailed Hemphill's reported symptoms such as depression, psychotic symptoms and anxiety without any objective medical findings. (Tr. 606 ¶ 2; 705-58). In fact, the ALJ concluded that the WES notes from June 2002 to September 2004 "reflect[ed] a conspicuous absence of any regularly observed abnormal objective findings." (Tr. 606 ¶ 3; see e.g. 630-67; 705-58). The ALJ then reviewed a psychiatric review technique form, again in an obsolete format, dated September 28, 2004 and signed by Mr. Moore. (Tr. 606 ¶ 4; 668-76). The ALJ remarked that Mr. Moore had checked off almost every possible symptomatic and diagnostic entry for each impairment and several extreme and marked limitations. (Tr. 606 ¶ 4). The ALJ concluded that the checked-off entries on this form bore "no specific relationship to the complaints and findings recorded in the WES evaluation and progress notes, including those prepared by Jim Moore himself." (Id.). The ALJ also noted several remarks Mr. Moore had made on the form which she identified as extraneous, inappropriate, and irrelevant. (Tr. 607 ¶¶ 1-2). As a result, the ALJ concluded that Mr. Moore's September 28, 2004 evaluation was not credible evidence. (Tr. 607 ¶ 2).

The ALJ then discussed Dr. Wolf's May 26, 2005 mental residual functional capacity assessment which according to the ALJ, "reflect[ed] almost exclusively check-off entries for 'marked' limitations" and contained no explanations for the assessments. (Tr. 607 ¶ 5; Doc. No. 7, Exh. E). The ALJ also reviewed another obsolete psychiatric review technique form, which was unsigned and undated but appeared to be in Dr. Wolf's handwriting and concluded that it suffered from many of the deficiencies found in Mr. Moore's September 28, 2004 form. (Tr. 607 ¶ 5; Doc. No. 7, Exh. F). The ALJ further concluded that, like Mr. Moore's evaluation, she was unable to give any great weight to Dr. Wolf's evaluations because he provided no explanations for his check-off entries and the forms showed no apparent correlation with objective clinical findings in the WES notes and treatment plans from June 2002 to September 2004. (Tr. 608 ¶ 1).

Contrarily, the ALJ gave great weight to the written interrogatory responses from Dr. Saul. (Tr. 609 ¶ 2; see Doc. No. 7, Exh. A, pgs. 5-11). According to the ALJ, Dr. Saul found no evidence of schizophrenia and concluded that Hemphill's treatment notes from prison and WES did not support mental problems severe enough to meet or equal any listing. (Tr. 608 ¶ 3). The ALJ also noted that Dr. Saul stated that certain of Hemphill's symptoms were only occasionally mentioned and, thus, were questionable. (Id.). As noted by the ALJ, Dr. Saul concluded that although Hemphill had some moderate limitations, he had no marked or extreme limitations. (Tr. 609 ¶ 1). Ultimately, the ALJ accorded Dr. Saul's responses more weight than those of Drs. Kron and Wolf and Mr. Moore because: (1) their reports were flawed as briefly outlined above and (2) Dr. Saul's assessment was a more reasonable and supportable interpretation of Hemphill's WES treatment and evaluation notes from June 2002 to September 2004 as well as Hemphill's subjective complaints presented in the WES records and at the two hearings. (Tr. 609 ¶ 2). Thus, contrary to Hemphill's argument, the ALJ did not give controlling weight to Dr. Saul's opinion simply because she discounted the other doctor's opinions. The ALJ next re-concluded that the forms completed by Drs. Kron and Wolf, and Mr. Moore were heavily reliant on Hemphill's

3

unsubstantiated subjective complaints and lacked "objective mental status findings, independent of [Hemphill's] self-reported complaints and response to treatment, that actually confirm[ed] or substantiate[d] his complaints." (Tr. 609 ¶2). The ALJ also noted that Hemphill's most dramatic complaints, while persistent, were controlled by medication according to the WES notes. (Id.; see e.g. 747-48; 750-51). As a result, I find that the ALJ's decision to discount certain opinions by Hemphill's treating physicians and therapists while giving great weight to Dr. Saul's opinion was supported by substantial evidence.

        C.      Third, Hemphill claims that the ALJ did not sufficiently document why she discounted the credibility of his testimony. "Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." Pysher v. Apfel, No. 00-1309, 2001 WL 793305, at *3 (E.D. Pa. July 11, 2001) (citing Van Horn v. Schweiker, 717 F.2d 871, 973 (3d Cir. 1983)). Moreover, such determinations are entitled to deference. S.H. v. State-Operated Sch. Dist. of the City of Newark, 336 F.3d 260, 271 (3d Cir. 2003). Likewise, the ALJ is required to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. Hartranft, 181 F.3d at 362 (citing 20 C.F.R. § 404.1529(c)). Accordingly, the ALJ noted, *inter alia*, that the opinion of Dr. Saul, the objective medical evidence (or lack there of), the treatment notes from WES, and Hemphill's ability to perform activities of daily living did not support his extreme subjective complaints or the opinions of certain physicians. (Tr. 602 ¶ 2 - 603 ¶ 2; 604 ¶ 2 - 610 ¶ 2; 612 ¶ 5 - 613 ¶ 2; 615 Finding 4). The ALJ also noted that Hemphill failed to raise the issue of mental impairments in his application for SSI, that there was no reference in his prison records to any evaluation or treatment for mental impairments, and that at the first hearing he failed to mention his use or need of a care-giver . (Tr. 601 ¶ 4; 603 ¶ 4; 611 ¶ 6). As a result, I find that the ALJ's credibility determination was sufficiently documented and supported by substantial evidence.

        D.      Fourth, Hemphill contends that the ALJ erred by failing to discuss why he did not meet listings 12.02 and 12.03. As discussed above, the ALJ's decision to credit Dr. Saul and discredit certain reports of Drs. Wolf and Kron and Mr. Moore was supported by substantial evidence. It is clear that, viewing the record in light of this decision by the ALJ, that Hemphill did not remotely meet the criteria for either of these two listings. Moreover, as noted by the ALJ, her conclusion was supported by Dr. Saul who opined that Hemphill did not meet any listings. (Tr. 608 ¶ 3; Doc. No. 7, Ex. A, pgs. 5-6). Thus, even if the ALJ erred in failing to specifically discuss the details of the relevant listings, the error is harmless. Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005) (refusing to remand where stricter compliance with a social security ruling would not have changed the outcome of the case).

        E.      Fifth, Hemphill argues that the ALJ improperly applied Medical-Vocational rule 201.18 to find that he was not disabled prior to August 8, 2004. Hemphill rightly claims that it is inappropriate to use the grids when a claimant has both exertional and non-exertional impairments. See Burnam v. Schweiker, 682 F.2d 456, 458 (3d Cir. 1982) (providing that "The medical-vocational grids do not purport to establish the existence of jobs for persons . . . who are afflicted with both exertional and nonexertional impairments"); Santise v. Schweiker, 676 F.2d 925, 934-35 (3d Cir. 1982) (holding that the grids "'may not be fully applicable' where a claimant suffers from non-exertional, instead of or in addition to exertional, impairments"). However, Hemphill fails

to mention in his argument that after making an assessment under the grids, the ALJ went on to consult a vocational expert who opined that work existed for a person with the combination of impairments Hemphill possessed. (Tr. 614 ¶ 4; 809-11); Burnam, 682 F.2d at 458; Santise, 676 F.2d at 935 (providing that one method of determining whether jobs exist in the national economy that the claimant is able to fill is to introduce testimony from a VE). The ALJ also noted that the VE's testimony was consistent with the vocational testimony provided at the prior August 21, 2002 hearing. (Tr. 567-70; 614 ¶ 5). Therefore, regardless of Hemphill's alleged nonexertional impairments, the ALJ discharged her duty by consulting a VE, who agreed with her determination under the grids that Hemphill could perform work prior to August 8, 2002. As a result, no error was committed.

        F.        Sixth, Hemphill contends that the hearing process was biased against him because, *inter alia*, the ALJ accused his attorney of being late and because, as a result of the delay, Dr. Saul, the ME, was not able to attend the hearing and was instead given written interrogatories to answer as authorized by Hallex I-2-5-30, 1994 WL 637367. An ALJ "shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision." Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995) (citing 20 C.F.R. § 416.1440). "The claimant must bring any objections to the attention of the ALJ, and the ALJ shall decide whether to continue the hearing or withdraw." Id. If the ALJ chooses not to withdraw, "the claimant may present objections to the Appeals Council as reasons why the hearing decision should be revised or a new hearing held before another ALJ." Id. Here, other than a very odd remark that Hemphill's counsel wanted to "sue [the ALJ] and the Social Security Administration", there is not a clear objection to the ALJ conducting the hearing. (Tr. 768). In fact, plaintiff's counsel agreed to continue with the hearing and use the written interrogatories instead of accepting the ALJ's offer to reschedule the hearing. (Tr. 598 ¶¶ 1-4; 763-68). Later, the ALJ also provided Dr. Saul's responses to Hemphill and held open the record in order to give him the opportunity to respond to interrogatory answers. (Tr. 598 ¶¶ 1-4; Doc. No. 7, Exh. A, pg. 2).[3] Even if Hemphill's counsel had objected during the hearing, Hemphill has failed to show actions by the ALJ which were shamefully offensive and unprofessional. Ventura, 55 F.3d at 905. As a result, Hemphill has failed to show bias.

        5.        Because the decision of the ALJ was supported by substantial evidence and legally sufficient, Hemphill's request for relief must be denied and the decision must be affirmed.

        An appropriate Order follows.

---

[3] The ALJ also asked counsel to brief the case because counsel stated that she had not had the opportunity to fully review the file. (Tr. 770; 772). Hemphill contends that this also shows bias because it is unusual for an ALJ to request briefs. On the contrary, I find that this shows that the ALJ wanted to make sure that Hemphill's counsel was fully prepared and had provided the ALJ with all relevant argument and evidence.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VICTOR HEMPHILL | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 07-1223 |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security | : | |

**ORDER**

AND NOW, this 21st day of November, 2007, upon consideration of the brief in support of request for review filed by plaintiff, defendant's response and plaintiff's reply thereto (Doc. Nos. 7, 8, & 9) and having found after careful and independent consideration that the record reveals that the Commissioner applied the correct legal standards and that the record as a whole contains substantial evidence to support the ALJ's findings of fact and conclusions of law, for the reasons set forth in the memorandum above, it is hereby **ORDERED** that:

1. **JUDGMENT IS ENTERED IN FAVOR OF THE DEFENDANT, AFFIRMING THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY** and the relief sought by Plaintiff is **DENIED**; and

2. The Clerk of Court is hereby directed to mark this case closed.

  S/ Lowell A. Reed, Jr.
LOWELL A. REED, JR., Sr. J.